J-S23031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF K.N.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.B. A/K/A T.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 409 EDA 2021 |

Appeal from the Order Entered January 26, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000172-2017

BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED SEPTEMBER 28, 2021**

Appellant L.B., a/k/a T.B., ("Appellant")[1] who was formerly in a relationship with K.M.L. a/k/a K.L., ("Mother"), appeals from the order entered on January 26, 2021, which denied his motion to intervene ("Order Denying Petition/Motion") in an adoption action filed by D.M., ("Maternal Aunt"), the maternal aunt of the subject child, K.L., ("Child") (born in March of 2010),

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We will refer to L.B. a/k/a T.B. as Appellant, and use "he/him" throughout this Memorandum. In its opinion, the trial court referred to Appellant as "L.B." and used "she/her", stating, "Within the transcript, L.B. was referred to by "he/him" pronouns in accordance with his preferred gender identity. However, [the trial court] will use the pronouns she/her for the purposes of this opinion, in accordance with the pronouns used in L.B.'s appeal (she/her)." Trial Court Opinion, 3/24/21, at 2, n.1. Further, we note Appellant points to the trial court's usage of the term "paramour" as an expression of bias against him, which we discuss *infra*, and we do not use that term herein.

pursuant to the Adoption Act (the "Act"),[2] 23 Pa.C.S. § 2701. In the same order, the trial court included a provision directing Appellant to stay away from Child ("stay away provision"). We affirm, in part, and vacate and remand, in part.

The trial court set forth the factual background and procedural history of this appeal as follows.

> The Department of Human Services ("DHS") initially became aware of Child after Child disclosed sexual abuse allegations against to [sic] L.B. and L.B.'s mother, [R.P.B.], the [c]hild's legal guardian, in 2015. (N.T. 1/26/2021 at 10). Subsequently, an Order of Protective Custody was obtained, and the Child adjudicated dependent[,] on August 8, [sic] 2015. (Trial Ct Order 8/3/2015).[3] On May 6, 2017, the parental rights as to Biological Mother and Biological Father were involuntarily terminated. (Trial Ct Order 5/6/2017).

Trial Court Opinion, 3/24/21, at 1-2.

On October 24, 2018, S.G., the foster parent with whom Child had resided since February 24, 2017, filed an adoption petition. On May 6, 2019, Maternal Aunt filed a motion to intervene. The trial court appointed Attorney Pierre E. Simonvil to represent Maternal Aunt on May 29, 2019. Thereafter,

_____

[2] 23 Pa.C.S. § 2101 et seq.

[3] In the dependency case underlying this matter, the trial court entered an order on August 3, 2015, that adjudicated Child dependent, as without proper parental care and control, 42 Pa.C.S. § 6302(1), and continued her placement in foster care. On May 4, 2016, in reviewing R.B.P.'s appeal, this Court affirmed the August 3, 2015 dependency adjudication/placement order. *See In the Interest of: K.L., a Minor, Appeal of R.P.B., Guardian*, 2016 Pa Super Unpub. LEXIS 1485, 2016 WL 2353033 (Memorandum filed May 4, 2016) (Pa. Super. 2016).

on June 19, 2019, Maternal Aunt filed her own adoption petition pursuant to 23 Pa.C.S. § 2701. On August 19, 2019, S.G. filed a motion to withdraw her adoption petition. The trial court granted S.G's motion, without prejudice, on September 17, 2019.

On December 12, 2019, Appellant filed a motion to intervene in Maternal Aunt's adoption action, asserting that he and Mother were in a relationship when Child was born, and that he has stood *in loco parentis* to Child. On January 3, 2020, Appellant also filed a petition for adoption of Child. On February 26, 2020, Maternal Aunt filed a second petition for adoption of Child, seeking an unsubsidized adoption. On January 25, 2021, the Child Advocate for Child, Attorney Judy M. Springer, filed a pre-trial memorandum on Child's behalf.

On January 26, 2021, the trial court held a hearing on Appellant's motion to intervene. Attorney Michael Mon represented DHS; Attorney Regine Charles-Asar represented Appellant; Attorney Simonvil represented Maternal Aunt; and Attorney Springer represented Child as Child Advocate. Appellant was the sole witness who testified at the hearing. Appellant's counsel stated that she had intended to call R.B.P. as a witness, but she discovered that R.B.P. had suffered a stroke on the previous day and remained hospitalized. *Id.* at 7-8. Appellant's counsel also wished to present the testimony of Maternal Aunt, but Maternal Aunt was unable to connect to the virtual hearing, as she was at work and lacked video capability. *Id.* at 8-9. The trial court

judge declined to permit Maternal Aunt to testify telephonically, as he could not view her and assess her credibility. *Id.* at 8. Maternal Aunt's counsel had also intended to present the testimony of Maternal Aunt but was unable to do so, as Maternal Aunt did not have video capability. *Id.* at 9.

After the hearing, on January 26, 2021, the trial court entered the Order Denying Petition/Motion. On February 22, 2021, Appellant, by and through his appellate counsel, Attorney Aaron A. Mixon, timely filed a notice of appeal from "the order entered in this matter on January 26, 2021," attaching the Order Denying Petition/Motion, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his reply brief filed on July 6, 2021, Appellant asserts that he subsequently learned there is a second, separate order, dated and entered on January 26, 2021, and captioned, "Dependency Court Protective Order." He claims that the trial court denied his guarantee to due process when it did not provide him with notice and an opportunity to be heard with respect to that order. Appellant's Reply Brief, at 1, 2-3, 13.[4]

As there are two orders in this matter, we must first address whether this appeal should be quashed pursuant to *Commonwealth v. Walker*, 646

---

[4] Moreover, Appellant seeks for us to suppress the brief of Appellee K.L, Child, in its entirety, asserting that it contains outrageous and shocking statements, and is false and misleading. Appellant's Reply Brief, at 1, 3-13. We decline to do so, as we have reviewed the record, and we are not misled by the statements in Child's brief over which Appellant takes issue.

Pa. 456, 185 A.3d 969 (2018) (clarifying that the 2013 amendment to the official comment to Pa.R.A.P. 341(a) provides a "bright line requirement for future cases . . . '[w]here . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed.'" *Id.* at 468, 185 A.3d at 976 (quoting Pa.R.A.P. 341, Official Note)).

The record reveals that, on January 26, 2021, the trial court entered an order in the adoption action at Juvenile Division Docket No. CP-51-AP-0000172-2017, captioned "ORDER DENYING PETITION/MOTION", denying Appellant's motion to intervene, which included a stay away provision directing Appellant to stay away from Child. The order included the boilerplate language, "[S]uch disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child." The trial court docket reflects that electronic notice was given to DHS, and electronic service was made on the Philadelphia Solicitor's Office and the Support Center for Child Advocates. There is no indication of notice to Appellant, however.

The record also contains a stay away order on a pre-printed form order bearing the same docket number as the adoption action, Docket No. AP-172-2017, "Dependency Court Protective Order", dated January 26, 2021, and providing boilerplate language, "pursuant to the [c]ourt's authority under the Juvenile Act, 42 Pa.C.S.A. §§ 6301, 6351 to ensure the safety and promote the best interests of the child named in the case caption, it is [o]rdered that

[L.B., a/k/a T.B.] refrain from any contact directly or indirectly with the above named [person] [Child] to be protected (i.e., no telephone contact, no verbal contact, no third party contact, no eye contact, no written contact, and no physical contact) and to refrain from any and all intimidation personally or by family and/or friends.'"  Beneath this statement was a boilerplate statement providing:

> VIOLATION OF THIS ORDER MAY RESULT IN COURT ACTION INCLUDING A FINE, IMPRISONMENT, OR PROSECUTION PURSUANT TO THE PA CRIMES CODE § 4952.
>
> This Order is valid until '1/26/22' (not more than one year from date of issuance).'

Dependency Court Protective Order, 1/26/21.  The order was signed by the trial court judge and the court clerk.  The trial court docket reflects that, on that same date, electronic notice was given to DHS, and electronic service was made on the Philadelphia Solicitor's Office and the Support Center for Child Advocates.  Again, there is no indication of notice to Appellant.

As the "Dependency Court Protective Order," entered January 26, 2021, was regarding the same docket number as, and duplicative of, the stay away order provision in the "Order Denying Petition/Motion," there was no need for Appellant to file a second notice of appeal.  *Cf. In the Interest of S.D.*, 2021 PA Super 126, 2021 Pa. Super LEXIS 386, 2021 WL 2521629 (quashing single notice of appeal filed to challenge distinct rulings on two separate trial court docket numbers, as appellants were required to file separate notices of appeal for each docket, following *Walker*).

- 6 -

In his brief on appeal, Appellant raises the following issues:

1) Did the trial court exhibit bias, ill-will, prejudice, and partiality against the Appellant by: a) beginning the hearing with substantial doubt as to the Appellant's standing regarding the Motion to Intervene and Petition to Adopt prior to hearing any evidence, b) refusing to allow vital witnesses to testify despite the extraordinary challenges presented by videoconferencing, c) threatening [ ] Appellant with a judicial conclusion of mendacity if Appellant did not use sophisticated legal definitions of common, everyday words, d) repeatedly interrupting testimony resulting in erroneous beliefs and conclusions as demonstrated by categorical errors in the Trial Court Opinion, and e) by [sic] failing to read or consider any case law properly placed into the record and cited in support of [ ] Appellant's position?

2) Did the trial court err in its statutory interpretation and application when it denied Appellant, [L.B.] a.k.a. [T.B.], standing to intervene in the adoption of [Child] despite uncontroverted proof submitted to the court that the Appellant stood in loco parentis for the subject child by assuming the role of parent and by discharging parental duties?

3) Did the trial court err when it issued a Protection from Abuse (PFA) order against [ ] Appellant following an ex-parte [sic] legal consultation with the subject child's advocate attorney in violation of the statutes, case law, and appellate rulings?

Appellant's Brief, at 5-6.[5]

Appellant summarizes his argument as follows:

_____

[5] We note that Appellant did not specifically preserve in his concise statement the challenges set forth in his issues 1a), 1c), and 1d) in his statement of questions involved portion of the brief on appeal, but, as they are intertwined with his main issue 1, in which he asserts bias, ill-will, prejudice, and partiality on the part of the trial court, we will review them as examples that support his allegation. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

[Issue 1] In a hearing on [Appellant's] Motion to Intervene in the adoption of [Child], the trial court exhibited a distinct and explicit bias, ill-will, prejudice, and partiality against [Appellant]. Prior to any argument or testimony, the trial court expressed substantial doubt that [Appellant] had standing to intervene in the adoption of [Child]. The court then refused to permit well-informed and indispensable fact witnesses to testify on behalf of [Appellant]. The court also threatened [Appellant] with a label of liar if he did not know and use the legal definitions of common words having everyday nonlegal meanings, repeatedly interrupted [Appellant's] testimony[,] leading to mistaken beliefs and erroneous conclusions as expressed both in the trial transcript and the Trial Court Opinion, and failed to read or consider a single piece of case law introduced into the record by [Appellant] supporting the Motion and Petition[,] as demonstrated by the court's instantaneous judgment without explanation and without spending any time deliberating, reflecting, or considering the evidence and case citations properly submitted to the trial court.

[Issue 2] The trial court also erred when it denied standing to [Appellant] where the law is clear that [Appellant] has standing to intervene in this adoption and should be heard on the Petition for Adoption at a full and fair hearing that includes all relevant witnesses and consideration of all applicable statutory and case law.

[Issue 3] Finally, the trial court engaged in a highly improper ex [ ] parte consultation where the court gave legal advice to the subject child's advocate attorney. Immediately upon giving the advice, the court issued a sua sponte PFA without any petition or ex [ ] parte hearing from a complainant in violation of Pennsylvania law.

For all of these reasons, the judgment of the trial court should be vacated, and the case remanded with instructions that [Appellant] has established standing to intervene in the adoption of [Child] and should be given a full and proper hearing on his Motion to Intervene and Petition for Adoption.

Appellant's Brief, at 12-13.

In a supplemental brief, filed on May 17, 2021, with this Court's permission, Appellant claims the trial court improperly relied on federal case

law as a basis for its stay away provision. Appellant's Supplemental Brief, at 2-14.

Regarding Appellant's issue 1, whether the trial court exhibited improper bias, ill-will, prejudice, and partiality against him, Appellant states:

The trial court exhibited a clear predisposition and prejudice against [ ] Appellant by 1) challenging with substantial doubt the idea that [ ] Appellant had standing to intervene prior to the [sic] hearing any argument or the testimony of a single witness, 2) summarily dismissing any allowance for vital witnesses to testify including the mother of [Appellant, R.B.P.,] because the witness had had a stroke and was hospitalized the day prior to the hearing, and the maternal aunt, who was a party to the case, but was unable to get her videoconferencing device to work, 3) threatening [ ] Appellant after being on the stand for less than 30 seconds with a judicial conclusion that Appellant was being dishonest if Appellant did not apply purely legal definitions to common, everyday words despite [ ] Appellant having no legal training whatsoever, 4) repeatedly interrupting [ ] Appellant's sworn testimony and then misstating that testimony in the Trial Court Opinion, and 5) by [sic] not engaging in any deliberation or review of submitted materials including case law supporting Appellant's position prior to rendering an incorrect judgment.

By engaging in all of these actions, the trial court violated [ ] Appellant's right to due process and the Pennsylvania Code of Judicial Conduct, Canon 3(A)(3), which states,

Judges should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacity, and should require similar conduct of lawyers, and of their staff, court officials, and others subject to their direction and control.

Note: The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate.

and the Pennsylvania Code of Judicial Conduct, Rule 2.2(1)[,] which requires that "To ensure impartiality and fairness to all parties, a judge must be objective and open-minded."

Appellant's Brief, at 14-15.

Although Appellant did not file a motion to disqualify or for recusal here, Appellant's counsel has raised the trial court's bias as an issue in this appeal. The trial court has requested this Court affirm the order, thus, rejecting the claim of bias. Our standard of review follows.

Where a jurist rules that she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 224, 489 A.2d 1291, 1301 (1985). Because "justice must satisfy the appearance of justice," *Commonwealth v. Stevenson*, 482 Pa. 76, 92, 393 A.2d 386, 394 (1978), "disqualification of a judge is mandated *whenever 'a significant minority of the lay community could reasonably question the court's impartiality.'" Commonwealth v. Bryant*, 476 A.2d 422, 426 (Pa. Super. 1984) (quoting *Commonwealth v. Darush*, 501 Pa. at 24, 459 A.2d 727, 732 (Pa. 1983)) (emphasis added).

Our Supreme Court has addressed this issue in *Reilly*, as follows:

Questions concerning the fairness, impartiality, or bias of the trial court always affect the administration of justice and can cloak the whole system of judicature with suspicion and distrust. Because recusal requests call into question our ability to mediate fairly, they raise important issues in which the public is concerned. If our courts are perceived to be unfair and biased, our future ability to adjudicate the public's grievances and wrongs will be threatened, because we all lose the one thing that brings litigants

- 10 -

into our halls of justice - their trust. Without the people's trust that our decisions are made without . . . bias . . ., our whole system of judicature will crumble.

*Reilly*, 507 Pa. at 224, 489 A.2d at 1301. As this Court has previously stated: "We share in the Supreme Court's awareness that 'the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of these elements.'" *Commonwealth v. Lemanski*, 529 A.2d 1087, 1089 (Pa. Super. 1987).

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa.Super. 2017). "Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues." *Brooks-Gall v. Gall*, 840 A.2d 993, 997 (Pa. Super. 2003) (recognizing that dependency proceedings implicate due process concerns). It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa. Super. 2018). "The right of a litigant to in-court presentation of evidence is essential to due process; in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *M.O. v. F.W.*, 42 A.3d 1068, 1072 (Pa. Super. 2012).

Regarding issue 1a), whether the trial court acted improperly by beginning the hearing with substantial doubt as to the Appellant's standing regarding the Motion to Intervene and Petition to Adopt prior to hearing any evidence, Appellant asserts:

In the instant appeal, it is clear that the trial court [judge] came to the proceedings having already decided to deny [ ] Appellant's Motion to Intervene and therefore was of the mindset to expedite the hearing and render his preordained judgment. This represents a clear violation of [ ] Appellant's right to procedural due process. **K.W. v. S.L.**, 157 A.3d 498, (2017 Pa. Super. 2017) [sic]; **Friends of Danny Devito v. Wolf**, 227 A.3d 872 (Pa. 2020).

While expressing substantial doubt, the trial court challenged the idea that Appellant might have standing to intervene in the adoption of [Child] prior to hearing any witness or even knowing who the expected witnesses were to be. The transcript shows the following exchange:

**THE COURT**: -- let me first ask before we even get to that, Ms. Charles-Asar –

**MS. CHARLES-ASAR**: -- yes

**THE COURT**: -- as I read through this. What grants your client standing in this case?

**MS. CHARLES-ASAR**: Your Honor, my client was longstanding caregiver for the child prior to the child coming into care. My client stood in loco parentis for a number of years prior to the child coming in to (sic) DHS care.

My client was in a long-standing relationship with bio mom, and stood pretty much as a stepparent to the child prior to the child coming –

**THE COURT**: Who was –

**MS. CHARLES-ASAR**: -- into care.

- 12 -

**THE COURT**: -- the child placed with; your client or the other individual?

**MS. CHARLES-ASAR**: Um, sorry, Your Honor, I don't un– when you –

**THE COURT**: Well –

**MS. CHARLES-ASAR**: -- say the other individual –

**THE COURT**: -- well, the - the –

**MS. CHARLES-ASAR**: -- (inaudible) –

**THE COURT**: -- was your client the guardian, per DHS?  If they place the child with your client or does –

**MS. CHARLES-ASAR**: Your Honor, this is –

**THE COURT**: -- your client or does your - or was your client simply the paramour[1] of the guardian?

**MS. CHARLES-ASAR**: -- Your Honor, this was prior to DHS ever being on the case.  When the child was born, the child went to live with my client's mother.  At four days old, my client became the caregiver of the child as well.

_____

[1]The word "paramour" carries a highly charged, negative connotation in the American Legal System and everyday life.  Definitions of "paramour" include:

Petitioner Bond sought revenge against Myrlinda Haynes— with whom her husband had carried on an affair-- by spreading two toxic chemicals on Haynes's car, mailbox, and doorknob in hopes that Haynes would develop an uncomfortable rash.... Somewhere in Norristown, Pennsylvania, a husband's paramour [Myrlinda Haynes] suffered a minor thumb burn at the hands of a betrayed wife.

***Bond v. United States***, 572 U.S. 844, 844, 867 (2014) (emphasis added).

"LOVER specifically: an illicit or secret lover" (Merriam-Webster, 2021); "An illicit or clandestine lover or mistress, esp. taking the place of a husband or wife; (now U.S. Law) the person with whom a married man or woman has an adulterous relationship." (Oxford English Dictionary, 2021); "Paramour is a lover, especially one in an adulterous relationship. In other words an illicit lover." (USLegal, 1997-2021).

Appellant's Brief, at 13-17 (quoting N.T. 1/26/21 at 6-7 (footnote in original)).

Upon a careful review of the record in this matter, with particular attention to the above-quoted portion of the notes of testimony, we find Appellant's argument that the trial court judge exhibited bias, ill-will, prejudice, and partiality against Appellant lacks merit.[6] The trial court did not exhibit bias or prejudice against Appellant, and its usage of the word "paramour", while personally offensive to Appellant, was not intended to exhibit ill-will against Appellant in view of the remainder of the trial court's discourse with Appellant on the record. Further, we do not perceive from the record that the trial court judge came into court with a mindset to deny Appellant's motion, or any violation of Appellant's guarantee to due process, as Appellant asserts in issue 1a). We do not find any abuse of discretion or error of law on the part of the trial court.

_____

[6] Appellant did not preserve any challenge to the trial court's conduct in relation to the Pennsylvania Code of Judicial Conduct, Canon 3(A)(3), or Pennsylvania Code of Judicial Conduct, Rule 2.2(1), in his concise statement and statement of questions involved, and, thus, waived those challenges. *See Krebs*, 893 A.2d at 797. Had he preserved these claims, we would find the trial court did not run afoul of either Canon 3(A)(3) or Rule 2.2(1).

- 14 -

Next, we address Appellant's issue 1b), whether the trial court erred and/or abused its discretion in "refusing to allow vital witnesses to testify despite the extraordinary challenges presented by videoconferencing". Appellant states:

> The trial court refused to make any concessions for witness testimony, even though this was a videoconference carried out using RingCentral software, which is not well known among the general public, especially those making up the witness pool. Nevertheless, the trial court refused to permit any delay, rescheduling, or modification of testimonial requirements to ensure that vital witnesses with important information were heard. Following is the exchange between the trial court, Appellant's attorney, and one of Appellant's witnesses.
>
> **THE COURT**: Okay. So you have one witness - how many witnesses do you have, Ms. Charles-Asar? You have [Appellant]?
>
> **MS. CHARLES-ASAR**: Yes. And, Your Honor, I was also going to call my client's mother, which wa - who had, actually, at one point in time, legal guardianship of the child.
>
> However, it was brought to my knowledge on Monday that she suffered a stroke, and she's currently in the hospital, recovering. So, she will not be available at this time.
>
> **THE COURT**: So, you have one witness?
>
> **MS. CHARLES-ASAR**: I was also going to call the maternal aunt, Your Honor.
>
> **THE COURT**: Is the maternal aunt on the line?
>
> **[MATERNAL AUNT]**: Yes. Yes, I am.
>
> **THE COURT**: Okay. No, I cannot see maternal aunt. I'm not taking testimony of people I can't see. I can't do that. I - I –

- 15 -

**[MATERNAL AUNT]**: I'm at work.

**THE COURT**: -- cannot - I cannot judge the credibility, and I'm not taking the testimony of somebody I can't see in the manner. I'm not doing that, Ms. Charles-Asar.

**[MATERNAL AUNT]**: I'll see if I try - if I can –

**THE COURT**: So, aside from –

**[MATERNAL AUNT]**: -- get in some other way.

**THE COURT**: -- that, you would have - those are the only two individuals, Ms. Charles-Asar?

**MS. CHARLES-ASAR**: Yes, Your Honor.

> After Counsel for Appellant informed the court of the newly[-]developed emergency situation involving a fact witness [R.B.P. being hospitalized], the court immediately stated, "So you have one witness." [N.T., 1/26/21, at 8.] Counsel for Appellant did not acquiesce to this statement. The [c]ourt[,] by its own direct statement[,] did not allow counsel leave to request a continuance or bifurcation of the hearing given the unforeseen illness that befell a fact witness or the inability of a second crucial witness unfamiliar with videoconferencing to be seen by the trial court. By this action, the trial court violated the Appellant's right to procedural due process.

Appellant's Brief, at 17-19 (quoting N.T., 1/26/21, at 7-9).

Concerning our review of the trial court's decisions to admit or exclude certain items and/or testimony from evidence, we adhere to the following standard:

> Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the

result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Schuenemann v. Dreemz*, *LLC*, 34 A.3d 94, 100-101 (Pa. Super. 2011) (quotations and citations omitted). Thus, the question of whether to admit or exclude evidence is within the sound discretion of the trial court. *See A.J.B. v. M.P.B.*, 945 A.2d 744, 749 (Pa. Super. 2008). We have explained:

The basic requisite for the admission of any evidence is that it be both competent and relevant. Evidence is "competent" if it is material to the issues to be determined at trial, and "relevant" if it tends to prove or disprove a material fact in issue.

*Turney Media Fuel, Inc. v. Toll Bros.,* 725 A.2d 836, 839 (Pa. Super. 1999).

In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of trial. *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009). The purpose of the rule is to afford the trial court an opportunity to correct any error at the time it is made. *Jackson v. Kassab*, 812 A.2d 1233, 1235 (Pa. Super. 2002) (quotation omitted).

The trial court provided the following analysis of Appellant's issue 1b).

**2. Appellant Failed to Make Relevant Objections on the Record as Required to Preserve Evidentiary Appeals**

The admission or exclusion of evidence is within the sound discretion of the trial court. *In re B.L.L.*, 787 A.2d 1007, 101 (Pa[.]Super[.] 1996). Upon appeal, the Superior Court will only reverse the trial court's decision upon demonstrating that the trial court "abused its discretion or committed an error of law.["] *Id.* (*See also In re Adoption of D.M.H.*, 452 Pa. Super[.] 340, 682 A.2d 315 (Pa. Super[.] 1996)). Additionally, "It is axiomatic that in order to preserve a trial objection for review, trial counsel is required to make a timely, specific objection during trial." *Takes*

*v. Metropolitan Edison Co.*, 548 Pa[.] 92, 98 (1997) (citing *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 260, 322 A.2d 114, 117 (1974); *see also Broxie v. Household Finance Company*, 472 Pa. 373, 372 A.2d 741 (1977)). This requirement ensures that the trial court can correct any alleged error during the trial. *Dilliplaine* at 258, 322 A.2d at 116.

* * *

[ ] L.B. failed to object to the exclusion of her witness on the record. Initially, L.B. intended to proffer the Child's maternal aunt as an additional witness. (*Id.* at 8). However, this Court determined that [M]aternal [A]unt would not be permitted to testify absent video capability. (*Id.*). Maternal Aunt stated that she would reconnect to the call with video capability and subsequently disconnected. (*Id.* at 8). This [c]ourt acknowledged that L.B. had two witnesses, and after stating that they would proceed with only L.B. on the line first, L.B.'s counsel replied, "No objection." (*Id.* at 8-12). At the conclusion of L.B.'s testimony, L.B.'s counsel stated that she had no further evidence. (*Id.* at 38). At no point during the hearing did L.B.'s counsel object to her witness not testifying. In fact, L.B.'s counsel did not attempt to call her witness after acknowledging that Maternal Aunt would try to reconnect. (*Id.* at 8, 38). Therefore, L.B.'s failure to call her witness or otherwise object to the exclusion of her witness does not rise to an abuse of discretion or error of law.

Trial Court Opinion, 3/24/21 at 6-7.[7]

As stated by the trial court, Appellant did not voice any concern about the trial court's holding the hearing with R.B.P. unavailable to testify as a witness, and he did not make any request to re-convene when R.B.P. would be discharged from the hospital. As such, Appellant did acquiesce in

---

[7] We note that Appellant failed to preserve the issue, set forth in his concise statement and discussed in the trial court opinion, regarding hearsay, by including the issue in both his concise statement and in the statement of questions involved portion of his brief. *See Krebs v. United Refining Co.*, 893 A.2d at 797. Thus, the claim concerning hearsay is not before this Court.

proceeding without R.B.P. as a witness. Moreover, while Appellant did proffer Maternal Aunt as a witness, via telephone, the trial court judge ruled he would not accept telephonic testimony from Maternal Aunt, as he would not be able to see her and assess her credibility. N.T., 1/26/21, at 8. Maternal Aunt stated that she would attempt to join the hearing in "some other way", but she was presumably unsuccessful. *Id.* Again, Appellant and his counsel did not make any attempt or arrangement to obtain Maternal Aunt's testimony as part of the videoconference hearing, or request the court re-schedule the hearing to a time when Maternal Aunt would be able to testify via videoconference. As such, Appellant did acquiesce in the trial court's proceeding with the hearing without Maternal Aunt on the videoconference. Accordingly, we find that Appellant waived the issue regarding the trial court's failure to re-schedule the hearing so that R.B.P. and Maternal Aunt could testify. *See e.g.*, *Tindall*, *supra*; *Jackson*, *supra*.

We reject Appellant's allegation that the trial court denied him due process by refusing to allow him to present the testimony of vital witnesses. There is nothing in the above-quoted exchange between Appellant's trial counsel and the trial court judge that demonstrates that Appellant requested any type of accommodation from the trial court so that Appellant could present their testimony or that Appellant sought to present these witnesses at some later date. Further, Appellant does not allege any relevant information that these potential witnesses held that should have been before the trial court in

rendering its decision. We do not perceive any bias, ill-will, prejudice, or partiality on behalf of the trial court, and we do not find any abuse of the trial court's discretion or error of law.

With regard to issue 1c), the trial court's allegedly "threatening [ ] Appellant with a judicial conclusion of mendacity [(*i.e.*, untruthfulness,)] if Appellant did not use sophisticated legal definitions of common, everyday words," Appellant asserts the following in his brief:

> Demonstrating a lack of patience and a disregard for the Appellant's lack of legal education, the trial court had the following exchange with the Appellant as a witness less than 30 seconds after the Appellant took the stand to testify[:]
>
> **MS. CHARLES-ASAR**: Now, [Appellant], what is your relationship to [Child]?
>
> **[APPELLANT]**: I am her dad.
>
> **MS. CHARLES-ASAR**: And when you say, "her dad," can you explain –
>
> **THE COURT**: Okay, I need –
>
> **MS. CHARLES-ASAR**: -- are you biological –
>
> **THE COURT**: -- let me - I need you to say something.
>
> **[APPELLANT]**: No.
>
> **THE COURT**: [Appellant], let me say something.
>
> **[APPELLANT]**: Sure.
>
> **THE COURT**: We are in court, and when I'm in court, I deal with legal definitions. Father –
>
> **[APPELLANT]**: Gotcha.

- 20 -

**THE COURT**: -- is a biological term. That - so, you tell me who you are to her. And if you –

**[APPELLANT]**: Okay.

**THE COURT**: -- when you mistake things of that nature, this [c]ourt looks at it as if you're not being truthful, trying to pull something over. So –

**[APPELLANT]**: Gotcha.

**THE COURT**: -- so, I will let you re-answer that question.

Appellant's Brief, at 20-21 (quoting N.T. 1/26/21 at 14-15 (emphasis added)).

Appellant argues:

> Expecting a lay witness to testify using "legal definitions" and stating to the witness that the "[c]ourt looks at it as if [the witness is] not being truthful" is outrageous, contrary to law, and wholly unreasonable. "The recollection of him who gave the testimony may be the most correct, but it is not in contemplation of law the best evidence; for it is in legal language no better than that of another person, as to what was said by the witness on that occasion." ***Leather v. Poultney***, 4 Binn. 352, 360 (Pa. Supreme Court, 1812).

Appellant's Brief, at 21-22.

Here, the trial court clearly was attempting to ascertain what Appellant meant by stating he was Child's "dad." Such a fact was important to determining whether Appellant, in fact, had acted *in loco parentis* to Child. We find the trial court's requesting Appellant to be direct and truthful in his testimony was not outrageous and threatening, as Appellant urges. Again, we do not perceive any bias, ill-will, prejudice, or partiality on behalf of the trial court, and we find no abuse of the trial court's discretion or error of law.

Next, in issue 1d), Appellant asserts that the trial court's repeatedly interrupting the testimony resulted in the trial court's erroneous beliefs and conclusions, as demonstrated by categorical errors in the trial court opinion. Appellant claims that the trial court exhibited its impatience toward him, which resulted in the trial court's decision being factually inaccurate. Appellant states as follows:

> One major effect of the trial court's impatience and repeated interruptions during the hearing was its inaccurate understanding of information. For example, the trial court, in its [Rule] 1925(b) [sic] Opinion, incorrectly reports:
>
>> However, L.B. later testified that she was convicted on several offenses, none of which were juvenile, including: identity theft and unlawful taking by deception. (*Id.* at 25).
>
> Trial Court Opinion, 3/24/21, at 2.
>
> Following is the actual exchange that took place between the trial court, Ms. Springer (the subject child's advocate-attorney), and [ ] Appellant.
>
> **MS. SPRINGER**: Yes. So, [Appellant], you talk about trying to clean up your record. Your record actually wasn't a juvenile record, was it?
>
> **[APPELLANT]**: Well, I was certified as an adult for the charge, yes.
>
> **MS. SPRINGER**: Okay. That's because you were 19 at the time; isn't that correct?
>
> **[APPELLANT]**: I was 19 at the time. I don't - I don't recall –
>
> **THE COURT**: Well, if you were –

**[APPELLANT]**: -- how old I was.  I (inaudible) –

**THE COURT**: -- 19 at the time, you weren't certified as an adult; you were an adult.

**[APPELLANT]**: I was - I was - I - there was more than one charge.  The first charge that I'm talking about, I was certified as an adult at 17 by Judge Reynolds.  He certified me and sent me to PICC [Philadelphia Industrial Correctional Center], and I had to stay in protection - custody until I turned 18 years old.

So yes, I was a minor at that time, and I was certified, and then it grow (sic) over to the adult courts and everything from the 1801 Vine.  But –

**MS. SPRINGER**: And –

**[APPELLANT]**: - yes.

**MS. SPRINGER**: -- you ha–

**[APPELLANT]**: I - it grew into adulthood.

N.T. 1/26/21 at 24-25.

In fact, in the Court of Common Pleas of Philadelphia County at Docket CP-51-CR-[  ]-1997, the offenses cited during the trial court hearing were committed on 12/18/1995[,] when [ ] the Appellant was 16½[]years[]old.  Appellant was, in accordance with the testimony in the transcript, a juvenile when these offenses were committed.  No offenses were committed at age 19. The trial court did not take the time to listen to the testimony and consequently, was mistaken in its belief and conclusions.  More importantly, all of the line[s] [of] questioning on cross[-]examination by both the Judge and other [a]ttorneys were beyond the scope of direct examination, and irrelevant to the question of whether or not Appellant met the necessary criteria to have standing to intervene in the adoption proceedings.

Appellant's Brief, at 22-24.

- 23 -

In his brief, Appellant did not include the exchanges that preceded this exchange: the cross-examination by counsel for Maternal Aunt, Attorney Simonvil, and the cross-examination by counsel for DHS, Attorney Mon. Those exchanges are as follows:

**MR. SIMONVIL**: [ ] [Appellant], when [Child] was removed from your mother's care, were you still, at that time, living with your mother?

**[APPELLANT]**: Yes, we were living together.

**MR. SIMONVIL**: Okay. And were there any allegations made against you about abuse regarding [Child]?

**MS. CHARLES-ASAR**: Objection, Your Honor.

**THE COURT**: Grounds?

**MS. CHARELS-ASAR**: Relevance.

**THE COURT**: Very relevant. Overruled.

**[APPELLANT]**: Yes, there was [sic] allegations made.

**MR. SIMONVIL**: What were the allegations? Can you elaborate?

**[APPELLANT]**: That I was supposed to – had abused my daughter.

**MR. SIMONVIL**: Okay. No further questions.

**THE COURT**: Mr. Mon, any questions?

**MR. MON**: Okay. All right, [Appellant], so you said that the child was removed from the care of your mother, right?

**[APPELLANT]**: Yes, from both of us.

**MR. MON**: Okay. Now, was there a petition naming you as the person who the child was being removed from or was it a petition filed against your mother and not you?

- 24 -

**[APPELLANT]**: Because I was not the one who was accused of abusing her.

**MR. MON**: Okay.  You just said there was an allegation against you.  Didn't you just say that?

**[APPELLANT]**: Um, the – as the time period went on, the allegations went from her to me, and then that's how the whole thing –

**MR. MON**: Okay.

**[APPELLANT]**: -- I have no idea how that happened, but yes, that –

**MR. MON**: Okay.  However, you were not – you were not – you did not have legal custody of the child at the time, did you?

**[APPELLANT]**: No, I didn't have legal custody, Mr. Mon, no.

**MR. MON**: Who was the legal guardian of the child at the time of removal?

**[APPELLANT]**: That was my mother.

**MR. MON**: Okay.  Why did you not file for legal custody?

**[APPELLANT]**: At that point, I was, you know, trying to clear up my record because of, like, the past juvenile charges that I was certified for –

**MR. MON**: Okay.  What were the juvenile charges?

**[APPELLANT]**: Uh – mm, receiving stolen property, um, uh, um, uh—

**MR. MON**: Was there a criminal mischief charge as well?

**[APPELLANT]**: -- criminal mischief, yes – a lot of stuff.  It was so long ago.  I was, like, 17 years old.

**MR. MON**: Okay.  All right.  Okay, and the court make a finding of dependency against you?

**[APPELLANT]**: A finding –

**MR. MON**: Did the child – did – did the – I'm sorry. I'll rephrase it. I know that that's confusing. I'm sorry. Did the court make a finding that [Child] was a dependent child as it relates to your care?

**[APPELLANT]**: No, I don't – I don't recall that.

**MR. MON**: Okay. That finding – instead, the finding was made against the biological mother, as well as the guardian, who is your mother; is that right?

**[APPELLANT]**: That is correct, yes.

**MR. MON**: Okay. All right, I don't have any other questions.

**THE COURT**: Ms. Springer?

**MS. SPRINGER**: Yes. So, [Appellant], you talk about trying to clean up your record. Your record actually wasn't a juvenile record, was it?

N.T., 1/26/21, at 21-24.

Notably, Appellant did not introduce his criminal record as an exhibit or object to the questioning as outside the scope of direct examination and irrelevant to his standing to intervene. We disagree with Appellant's contention that the trial court acted improperly in permitting the questioning and asking questions itself in attempting to ascertain Appellant's criminal record and its impact on Appellant's failure to pursue being designated as Child's legal guardian instead of his mother becoming Child's legal guardian. We do not perceive any impatience on the part of the trial court toward Appellant which resulted in the trial court's decision being factually inaccurate,

as Appellant alleges. Again, we do not perceive any bias, ill-will, prejudice, or partiality on behalf of the trial court, and we find no abuse of the trial court's discretion or error of law.

Next, we address Appellant's issue 1e), whether the trial court exhibited bias, ill-will, prejudice and partiality in failing to read or consider any case law properly placed into the record and cited in support of Appellant's position. In his brief, Appellant states:

> Also[,] the trial court did not deliberate upon the arguments rendered by the attorneys of record after all of the evidence was entered into the record. Counsel for [A]ppellant and counsel for DHS cited case law and statutory authority into the record. N.T. 1/26/21 p. 39-46. The court did not take a short recess to review which authority cited was controlling in the case at bar. After counsel for DHS concluded his argument, the trial court immediately ruled that [A]ppellant did not have standing. N.T. 1/26/21 p. 46. Because the trial court demonstrated prejudice and a predisposition against [ ] Appellant before the hearing even commenced, the judgment of the trial court should be vacated, and the case remanded for a full and appropriate hearing.

Appellant's Brief, at 21-25.

After our review of the record, we find Appellant's argument that the trial court allegedly held bias, ill-will, prejudice, and partiality against him, as demonstrated by its failure to deliberate or take a short recess to consider on the parties' arguments and consider the controlling case law, lacks merit. There is no question of the trial court's impartiality here, and no appearance of prejudice that would warrant new proceedings on Appellant's motion to intervene. *See In re Lokuta*, 608 Pa. 223, 238-239, 11 A.3d 427, 435-436 (2011) (stating that a jurist's impartiality is called into question whenever

- 27 -

there are factors or circumstances that may reasonably question the jurist's impartiality in the matter; there is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings) (quotations omitted). Here, the trial court determined that Appellant did not have *in loco parentis* status necessary for standing. We remind Appellant that adverse rulings alone do not establish the requisite bias warranting the recusal of a trial court judge for bias, especially where the rulings are legally proper. **See In re S.H.**, 879 A.2d 802, 808 (Pa. Super. 2005). Again, we do not perceive any bias, ill-will, prejudice, or partiality on behalf of the trial court, and we find no abuse of the trial court's discretion or error of law.

Next, we address the second issue in Appellant's brief, *i.e.*, whether the trial court erred in finding Appellant lacked standing to intervene in Maternal Aunt's adoption action, "despite uncontroverted proof submitted to the court that [Appellant] stood in loco parentis for the subject child by assuming the role of parent and by discharging parental duties[.]" **See** Appellant's Brief, at 5-6. Appellant argues:

> Due to the trial court's multiple errors interpreting the rules of standing and because the trial court erred in dismissing [ ] Appellant's Motion to Intervene without a full hearing, the judgment of the trial court should be vacated, and the case remanded with an order that standing has been shown and a full and effective hearing [should be] held on the Appellant's Motion to Intervene.

[Appellant's] Brief, at 33.

- 28 -

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***K.W. v. S.L.***, 157 A.3d 498, 504 (2017) (quoting ***Rellick-Smith v. Rellick***, 147 A.3d 897, 901 (Pa. Super. 2016)).

The trial court addressed Appellant's issue as follows:

## A. [The Trial] Court Properly Denied L.B.'s Motion to Intervene

Adoption hearings are governed by the Adoption Act. 23 Pa.C.S. § 2101. The Adoption Act contains specific provisions that must be followed when a party seeks to adopt a child. ***In re Adoption of Hess***, 530 Pa. 218 (1992). Pursuant to the Adoption Act, after parental rights are terminated, any individual may become an adopting parent after first filing a Report of Intention to Adopt. ***In re Adoption of Hess***, 530 Pa. at 223 (***See also*** 23 Pa.C.S. [§] 2312, 23 Pa.C.S. [§] 2531). The current legal guardian or agency with custody of the [c]hild must consent to the [c]hild's adoption. ***Id.*** For a third party to pursue adoption or visitation, the party must have standing, which can only exist "where legislature has specifically conferred it or where the party stands in loco parentis to the child". ***In re N.S.***, 845 A.2d 884, 886-7 (Pa Super. 2004) (citing ***In the Matter of the Adoption of A.M.T. and C.C.T.***, 803 A.2d 203 (Pa[.] Super. 2002)). In any adoption proceeding, the best interest of the child is the most significant consideration. ***See*** 23 Pa.C.S. [§] 2902(a). ***In re Adoption of Hess***, 530 Pa. 218 (1992). Instantly, this [c]ourt found that Appellant's Motion to Intervene should be denied.

## 1. [The Trial Court] Properly Found that L.B. Lacked Standing to Intervene.

Generally, a third party must either demonstrate that he or she acts currently in loco parentis to the child or has obtained written consent from the guardian of the child in order to establish standing to file a petition for adoption. 23 Pa.C.S.A. [§] 2711(a)(5); ***In the Matter of the Adoption of A.M.T. and C.C.T.***, 803 A.2d 203, 208 (Pa[.] Super 2002) (emphasis added). "The legal status of in loco parentis refers to a person who puts himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going

through the formality of a legal adoption." ***In re Adoption of B.R.S.***, 11 A.3d 541, 547 (Pa. Super 2011). The moving party must prove essential facts to support a conclusion that such a relationship exists. ***T.B. v. L.R.M.***, 567 Pa. 222, 228 (2001) (citing ***Kransky v. Glen Alden Coal Company***, 354 Pa. 425 (1946)). Courts have granted in loco parentis status to third parties where the third party and the biological parent resided together as a family unit. ***In re T.B. v. L.R.M***., 567 Pa. at 228. However, the Superior Court has denied in loco parentis status to third parties who have acted solely as a "caretaker". ***D.G. v. D.B.***, 2014 Pa Super 93, 91 A. 3d 706. 711 (Pa Super 2014).

Here, L.B. cannot establish standing as she did not currently act in loco parentis to the Child. Most significantly, Child has not resided with L.B. since March 31, 2015, over 5 years prior to the hearing. (N.T. 1/26/2021 at 15). Since 2015, Child has been in DHS's custody. (***Id.***). As a result, L.B. cannot demonstrate that she acts currently in loco parentis. Additionally, several other factors demonstrate that L.B. cannot be granted in loco parentis status. First, L.B. was never named Child's legal guardian. (***Id.*** at 22). Instead, Child's biological mother granted L.B.'s mother legal guardianship of Child. (***Id.*** at 23). Although L.B. resided with the Child's legal [g]uardian, she never assumed legal responsibility for the [c]hild. (***Id.*** at 22). Notably, L.B. was never named as a party to Child's dependency matter as there was no existing biological or legal relationship to the [c]hild at the time of her removal. (***Id.***). Second, L.B. and Mother rarely resided together as a family unit, expect [sic] for a very brief period. (***Id.*** at 18). This demonstrates that an existing family unit between biological mother, Child and L.B. never existed. Therefore, as L.B. does not currently act in loco parentis as to Child, this [c]ourt properly found that she lacks standing to file a petition for adoption as to Child.

Trial Court Opinion, 3/24/21, at 4-6.

Appellant complains that the trial court misinterpreted and misapplied our Supreme Court's decision in ***In re Adoption of Hess***, 530 Pa. 218, 6018 A.2d 10 (1992), and this Court's decision in ***In re Adoption of A.M.T.***, 803 A.2d 203 (Pa. Super. 2002). We disagree.

In **Hess**, the trial court had terminated the parental rights of the subject children's natural parents. The trial court entered an order denying the paternal grandparents' motion to intervene in adoption proceedings commenced by the parties who had custody of the subject children. This Court reversed the denial of the intervention. Our Supreme Court reviewed this Court's reversal of the trial court's denial of the parental grandparents' motion to intervene. The Supreme Court in **Hess** reviewed for whether the trial court had committed an error of law or an abuse of discretion. The Supreme Court concluded that this Court properly determined that the trial court had erroneously applied the Adoption Act and abused its discretion in denying the grandparents' petition to intervene.

The Supreme Court stated as follows:

> Wherever possible, we must be guided by the specifications of the Adoption Act in making our determination. **See, e.g.**, **Matter of Adoption of Sturgeon**, 300 Pa. Super. 92, 445 A.2d 1314 (1982).

> The Adoption Act sets forth specific procedures that must be followed by a party seeking to adopt a child. Under its provisions, once parental rights are terminated, "[a]ny individual may become an adopting parent." 23 Pa.C.S. § 2312. A party seeking to adopt a child must first file a Report of Intention to Adopt. 23 Pa.C.S. § 2531(c). A report is also filed by the intermediary who arranged the adoption, and an investigation is conducted to determine the suitability of the adoption. 23 Pa.C.S. § 2535. Once the proposed adoption is determined to be feasible, the adoption procedure is commenced. 23 Pa.C.S. § 2701 et seq. A Petition to Adopt must be filed, and the court shall obtain any necessary consents to the adoption. 23 Pa.C.S. § 2711(a). The court then holds a hearing for a final determination of whether the adoption decree should be entered. 23 Pa.C.S. § 2721. At all

stages of the proceedings, the best interest of the child is the paramount consideration. ***See***, 23 Pa.C.S. § 2902(a).

***Hess***, 530 Pa. at 223-224, 608 A.2d at 13.

The Supreme Court set forth the Pennsylvania Rule of Civil Procedure governing intervention, Pa.R.C.P. 2327, as follows:

**Rule 2327.  Who May Intervene**

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

* * *

(3) such person could have joined as an original party in the action or could have been joined therein.

***Hess***, 530 Pa. at 223, 608 A.2d at 12 (quoting Pa.R.C.P. 2327).

The Supreme Court in ***Hess*** stated:

A child's interests are best served when all those who demonstrate an interest in his or her welfare are allowed to be heard. Therefore, at the very least, the grandparents should have been welcomed by the [county children and youth] agency to offer what information they could in relation to their grandchildren's best interests.

***Hess***, 530 Pa. 227, 608 A.2d at 15.

In ***A.M.T.***, this Court addressed a situation in which the maternal aunt and uncle filed a petition for adoption of two children whose parents were deceased, and attached the consent of the children's guardian, who was the maternal aunt's sister.  The paternal aunt and uncle of the two children filed a petition to stay the adoption hearing.  At a hearing before the trial court, the parties from both families agreed that the paternal aunt and uncle would

withdraw their competing custody complaint and instead file a petition to intervene in the adoption proceedings. Accordingly, the paternal aunt and uncle filed a petition for adoption. Thereafter, the maternal aunt and uncle filed a motion to strike the petition alleging that the parental aunt and uncle failed to file it within the time frame set forth in the trial court's order that permitted them to intervene. The trial court held a hearing on the motion to strike. Afterwards, it denied the adoption petition of the paternal aunt and uncle on the basis that it was not accompanied by a consent of the guardian of the children, and that they did not otherwise have standing.

The paternal aunt and uncle filed an appeal with this Court, arguing that the trial court erred when it denied their petition based on the reasoning it did not have an attached consent form signed by the guardian.

In **A.M.T.**, this Court stated:

> We also recognize that the Courts have clearly rejected attempts to extend the application of **Hess** to third parties who do not have a familial relationship with the adoptees. **See In re Adoption of S.P.T.**, 2001 PA Super 252, 783 A.2d 779 (Pa. Super. 2001) (holding that biological mother who had previously voluntarily terminated her parental rights to her child was a third party and lacked standing to bring adoption petition for the child when adoptive parent died); **In re Adoption of Wims**, 454 Pa. Super. 498, 685 A.2d 1034 (Pa. Super. 1996) (finding that former foster parents of child were third parties and did not have standing to pursue an adoption petition of child without consent of persons with physical custody of the child or establishing that they stood in *loco parentis* to child); **Chester County Children and Youth Services v. Cunningham**, 431 Pa. Super. 421, 636 A.2d 1157 (Pa. Super. 1994), *affirmed by an evenly divided court,* 540 Pa. 258, 656 A.2d 1346 (1995) (holding that foster parents lacked standing to seek adoption of their foster children where child

welfare agency did not consent to adoption and foster parents were not related to foster children).

> *However, our appellate courts have not previously been requested to apply the holding in **Hess** to a factual situation similar to that presently on appeal, namely, where both prospective adoptive families have a close familial relationship with the adoptees.* In this instance, the deceased parents' siblings have filed competing petitions for the adoption of their nieces. While Appellants, the paternal aunt and uncle, were the first to file a complaint for custody of the children, the maternal relatives were the first to file a petition for guardianship, resulting in the maternal aunt, J.M.F., being appointed guardian. As guardian of the children, J.M.F., thereafter provided consent pursuant to 23 Pa.C.S.A. section 2711(a)(5) for the adoption of the children by her sister and brother-in-law, D.C.B. and W.B. While the orphans' court granted Appellants the right to intervene in the existing proceedings, it denied their petitions to adopt the children on the basis of their failure to obtain consent by the guardian. Thus, while Appellants could have testified at the hearing on W.B. and D.C.B's petition to adopt with regard to evidence pertaining to W.B. and D.C.B., they could not have testified as to why it would be in the best interests of the children to be adopted by Appellants, who stand in a similar degree of consanguinity to the children as do W.B. and D.C.B.

**In re Adoption of A.M.T.**, 803 A.2d at 207-209 (emphasis in original).

We continued:

> Consequently, as in **Hess,** the court in the present case "has preliminarily barred the presentation of potentially relevant evidence concerning the *BEST* interests of the children, and has thereby rendered it impossible for it to make a reasoned determination of the children's *BEST* interests on the basis of *ALL* of the possibly relevant evidence bearing on the ultimate and vital issue before it." **Hess**, 562 A.2d at 1381. This is especially true here where the eldest sibling of A.M.T. and C.C.T. chose Appellants [the paternal aunt and uncle] as his guardians and now resides with them. While the court permitted Appellants to intervene, it should have also permitted them "to participate in the proceeding just as any other individual or individuals who seek to adopt a child." **Hess**, 530 Pa. at 227, 608 A.2d at 15. To find otherwise under the facts of this case, not only ignores what is in

the best interest of the children, but unjustly rewards the extended family members who first obtain guardianship of their relative's children by granting them the power to control the adoption process. Accordingly, we find **Hess** applicable to the facts of the present case and, as such, we vacate the adoption decree, reverse the order denying Appellants' petition to adopt on the basis of standing, and remand for further proceedings.

*In re Adoption of A.M.T.*, 803 A.2d at 209.

In *In re N.S.*, 845 A.2d 884 (Pa Super. 2004), the appellant, a former foster mother of three children who were removed from her home pursuant to a court Order following allegations of abuse, appealed from the order ruling that she did not have standing to pursue adoption and/or visitation proceedings with regard to the children. A panel of this Court stated:

> In Pennsylvania, to have standing to file a petition for adoption, the third party must establish that she either currently acts in *loco parentis* to the prospective adoptee or has obtained the written consent from the guardian of the child. ***In the Matter of the Adoption of A.M.T. and C.C.T.***, 2002 PA Super 216, 803 A.2d 203 (Pa. Super. 2002). In order for a third party to pursue such adoption or visitation, the party must have standing, and standing for a third party can exist only where the legislature has specifically conferred it or where the party stands in *loco parentis* to the child. **T.B. v. L.R.M.**, 567 Pa. 222, 786 A.2d 913 (2001).

*In re N.S.*, 845 A.2d at 886-887.

The panel held that the foster mother lacked standing for adoption under § 6336.1 of the Juvenile Act because (1) not only had the foster mother not been awarded legal custody of the children, but she was no longer a licensed foster care provider; (2) even if she was still considered a foster parent, the Department of Children and Youth Services (CYS) did not consent to the adoption proceeding; and (3) the foster mother did not stand *in loco parentis*

- 35 -

to the children because the agency was granted custody of the children pursuant to 23 Pa.C.S. §§ 2311 and 2521(c), so the agency stood *in loco parentis* to the children. *In re N.S.*, 845 A.2d at 887-888.

Appellant argues that the trial court misunderstood these cases and misapplied the law governing who has *in loco parentis* standing to intervene in an adoption proceeding. *See* Appellant's Brief, at 25-34. Appellant, however, relies on the custody statute governing who may file an action for any form of legal or physical custody, 23 Pa.C.S. 5324, and cases involving custody actions, which are inapposite to the present case. *See* Appellant's Brief, at 29-30.

We find that the trial court thoroughly addressed the case law regarding *in loco parentis* status in an adoption case, as set forth above. The trial court did not misinterpret or misapply that law in reaching its conclusion that Appellant did not establish he had *in loco parentis* standing to intervene in Maternal Aunt's adoption action. Accordingly, we find no abuse of the trial court's discretion or error of law in reaching its conclusion that Appellant lacked *in loco parentis* standing to intervene in Maternal Aunt's adoption proceeding, as explained by the trial court in its opinion.

Finally, we address Appellant's third issue, *i.e.*, whether the trial court erred when it issued the stay away provision/order, treating both the stay away provision in the "Order Denying Petition/Motion," and the "Dependency Court Protective Order," together. Appellant contends that the trial court did

not provide him with notice and an opportunity to be heard on the stay away provision/order, and, thus, the court violated his guarantee to due process of law. We have set forth above the cases governing our review of a claim of a procedural due process violation. **See Tejada**, 161 A.3d at 317; **Brooks-Gall v. Gall**, 840 A.2d at 997; **S.T.**, 192 A.3d at 1161; and **M.O.**, 42 A.3d at 1072.

Appellant points to the following exchange which occurred after the close of the evidence at the hearing regarding Appellant's motion to intervene as the only evidence in the record upon which the trial court based the stay away provision:

> **THE COURT**: . . . That said, that motion [to intervene] is denied. Ms. Charles-Asar, you and your client [Appellant] are excused.
>
> **MS. SPRINGER**: Your Honor, I have one additional –
>
> **THE COURT**: Ma'am, ma'am –
>
> **MS. SPRINGER**: -- piece (inaudible).
>
> **THE COURT**: -- ma'am, hold on. Ms. Charles-Asar, you and your client are excused. [Attorney Charles-Asar and Appellant disconnect from videoconference.] Now, Ms. Springer?
>
> **MS. SPRINGER**: Your Honor, I have one additional piece of business for the court. [T.B. (Appellant)] has –
>
> **THE COURT**: Ms. - Ms. –
>
> **MS. SPRINGER**: -- been appearing -
>
> **THE COURT**: -- stop, stop, stop, stop. [T.B. (Appellant)] is not a party to this anymore, now –
>
> **MS. SPRINGER**: I understand.

- 37 -

**THE COURT**: -- or – no, no, now we're at the pretrial hearing phase. I don't want to hear about [T.B. (Appellant)].

**MS. SPRINGER**: I understand, Your Honor, but we have an issue. [T.B. (Appellant)] has been appearing at the daycare. He's been appearing at the school. He's been trying – he's been pretending to be other people, trying to get access to the child.

And there - we don't have - we don't have grounds for a PFA [Protection From Abuse Act order], and so, I'm looking for what relief –

**THE COURT**: We'll have a stay away. I'll issue a stay away against [T.B. (Appellant)], to the child.

**MS. SPRINGER**: Thank you, Your Honor. And can Your Honor please use the a.k.a. [for Appellant] of [L.B.] as well?

**THE COURT**: [T.E.B.] - well, it's [L.E.B.], and is it [T.B.]? I don't know what the name is.

**MS. SPRINGER**: He has –

**MR. MON**: The legal name is [L.B., a.k.a. T.B.].

**THE COURT**: That's what we do.

**MS. SPRINGER**: Thank you, Your Honor. I appreciate that.

Appellant's Brief, at 34-35 (*quoting* N.T., 1/26/21, at 46-48).

In its opinion, the trial court explains its issuance of the stay away provision/order as follows:

> **B. [The Trial Court] Properly Issued a Stay Away Order for L.B. as to Child**
>
> As a general rule, orders granting or denying temporary restraining orders are unappealable. ***Nutasweet Co. v. Vit-Mar Enterprises, Inc.***, 112 F.3d 689, 692 (3d Cir. 1997); ***See also Vuitton v. White***, 945 F.2d 569, 572 (3d Cir. 1991). However, a temporary restraining order issued without notice to the adverse

party shall expire by its own terms no later than 10 days after its entry, unless, for good cause shown, it is extended for a like period or unless the party against whom it is entered consents to an extension. Fed. R. Civ.P. 65(b).

In the instant case, there were allegations that L.B. had been appearing at the Child's daycare and school under different aliases to see the Child. (N.T. 1/26/21 at 47). L.B. and [her] counsel were dismissed from the hearing as this [c]ourt found she did not have standing to participate. When making its determination, [the trial court] found it was beneficial to [ ] Child's safety and best interest to issue a protective order as to L.B. As there were assertions on the record that L.B. used aliases to see Child without DHS's permission or knowledge, [the trial court] determined that good cause existed to extend the order for the Child's protection.

Trial Court Opinion, 3/24/21, at 7-8 (emphasis in original).

Recently, a panel of this Court addressed a similar issue in **B.T. v. B.S.**, 2020 Pa.Super. Unpub. LEXIS 1312, 2020 WL 1903954 (unpublished Memorandum filed April 17, 2020) (Pa. Super. 2020). Although we are not bound by the result in **B.T.** as precedent, our rules provide that the decision may be cited for its persuasive value.[8]

In **B.T.**, the mother of two children who were in kinship foster care with the mother's sister, the maternal aunt of the children, filed an appeal from

---

[8] **See** Pa.R.A.P. 126(b)(1) (As used in this rule, "non-precedential decision" refers to an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019. . ."); (b)(2) "Non-precedential decisions as defined in (b)(1) may be cited for their persuasive value). **See also** Internal Operating Procedure ("IOP") 444C. (providing, "Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value, pursuant to Pa.R.A.P. 126(b)").

two juvenile court protective orders, one as to each child, that directed her to stay away from the maternal aunt. The issue on appeal was whether the juvenile court erred and abused its discretion by entering permanent protective orders against the mother to stay away from the maternal aunt at the aunt's residence,[9] without providing the mother due process of law, in issuing the orders *ex parte* and without the creation of a record. The juvenile court entered the protective orders based on the mother's alleged aggressive behavior toward the maternal aunt shortly after the permanency hearing, citing the Juvenile Act, 42 Pa.C.S. §§ 6301 and 6351.

The majority decision in **B.T.** stated:

> This case, unlike [**Commonwealth v. Moody**, 633 Pa. 335, 125 A.3d 1 (Pa. 2015)], does not involve willful misconduct that occurred in the presence of the court and obstructed its fair and orderly process. [The mother's] alleged misconduct did not occur in the presence of the trial court and did not obstruct orderly process. It occurred after the hearing was over. We have no record of the facts because none was created. We have only the trial court's opinion, which states that [the mother] exhibited aggressive behavior toward L.B. after the May 2, 2019 hearing, and that [the aunt] **returned** to the courtroom and requested a protective order. Trial Court Opinion, 7/9/19, at 3. Because there is no record of the facts that gave rise to the order on appeal, there is no support for the entry or [sic] an *ex parte* order with no [due] process under the rationale of **Moody**.
>
> More pertinent instantly is the rationale of [**In re Penny R.**, 353 Pa. Super. 70, 509 A.2d 338 (Pa. Super. 1986)], in which the record contained only "vague innuendo" as to the reasons for the order, and therefore no means of conducting appellate review. Even though that case involved the PFA, not child dependency, **Penny R.** teaches that a minimum amount of due process is

_____

[9] The mother and the aunt worked together at the same facility.

necessary to facilitate appellate review. Even in cases of direct criminal contempt in the presence of the court, such as ***Moody*** and [***Commonwealth v. Falana***, 548 Pa. 156, 696 A.2d 126 (Pa. 1997)], this Court was able to review the record in assessing the propriety of the trial court's action. Here, as in ***Penny R.***, the record is inadequate to facilitate appellate review.

In summary, the trial court exercised a power not expressly granted to it by statute or case law, without affording any due process to the subject of the order, without creating any record to support its action, and without giving [the mother] the opportunity to raise legal objections prior to appeal. We recognize that the children's best interest is paramount in dependency cases, but we do not believe the trial court would have undermined the children's best interests by affording [the mother] notice and an opportunity to be heard, either prior to the entry of the order or sometime shortly thereafter, to facilitate appellate review.

For all of the foregoing reasons, we vacate the trial court's orders.

***B.T.***, 236 A.3d 1107 (unpublished memorandum filed April 17, 2020), 2020 Pa.Super. Unpub. LEXIS 1312 at 6-11, 2020 WL 1903954 (footnotes in original).[10]

Here, although the case presently before this Court commenced with dependency proceedings in juvenile court, the trial court had convened the hearing in the instant matter regarding Appellant's motion for intervention in Maternal Aunt's adoption action. The parties were not before the court in relation to a dependency proceeding. Unlike the situation in ***B.T.***, Appellant's

---

[10] Notably, the trial court stated that the mother did not challenge the trial court's authority to enter the protective order, but rather the trial court's entry of the order *ex parte* and without creation of a record. ***B.T.***, 2020 Pa.Super. Unpub. LEXIS 1312 at 4-5, 2020 WL 1903954.

alleged actions did not take place in the hallway just outside of court proceedings but allegedly occurred at Child's school. Importantly, the Child Advocate did not raise her allegations and concerns, and her request for protection of Child from Appellant, with the court until Appellant and his counsel had been excused from the hearing.

We are persuaded by the reasoning of the majority Memorandum in *B.T.* that Appellant was not afforded procedural due process, as he lacked notice and an opportunity to be heard. We find the federal cases cited in the trial court opinion, regarding temporary restraining orders, inapposite to this adoption case. The trial court, however well-intentioned, did not provide Appellant any notice or an opportunity to be heard on the Child Advocate's allegations that Appellant had engaged in actions upon which the trial court decided to issue the stay away provision/order. Without hearing from Appellant and creating a record from which this Court may conduct meaningful appellate review, we must agree that the trial court deprived Appellant of due process when it included the stay away provision in the January 26, 2021 Order Denying Petition/Motion. While we recognize that Child's best interests are at issue, upon remand, if any party has a basis for seeking such an order in this matter, it will have to be pursued in a manner to adhere to the parties' guarantees to due process and with the creation of an appellate record from

which this Court may conduct our review. Thus, we vacate and remand the stay away portion of the January 26, 2021 Order Denying Petition/Motion.[11]

Order affirmed, in part, and vacated and remanded, in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2021

---

[11] Moreover, based on our discussion, **supra**, regarding the applicability of **Walker** to the present matter, we find the January 26, 2021 Dependency Court Protective Order to be a nullity, as it was duplicative of the stay away provision in the January 26, 2021 Order Denying Petition/Motion. We recognize that the January 26, 2021 Dependency Court Protective Order included some boilerplate language which is in the dependency court protective order form. We have no need to address this language because we have concluded that it was improper for the trial court to issue either a stay away provision or stay away order against Appellant without providing Appellant with due process. Moreover, based on our conclusion, we need not address Appellant's allegation that he did not receive notice of the "Dependency Court Protective Order," and learned of its existence from the brief filed by the Child Advocate for Child. **See** Reply Brief of Appellant, at 2.